**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


SHEILA R. CHAMBERS,         )
                                      )
               Plaintiff     )
                                      )       **MEMORANDUM OPINION**
     v.                      )      **AND RECOMMENDATION**
                                        )
MICHAEL J. ASTRUE,        )          1:08CV806
Commissioner of Social Security,   )
                                        )
               Defendant.  )


Plaintiff, Sheila R. Chambers, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 9, 2006, alleging a disability onset date of November 19, 2005. Tr. 85.[1] The

---

[1]   Plaintiff filed for DIB on at least two prior occasions. She filed an application in July 2001, alleging disability as of January 23, 2001. The claim was denied at the reconsideration level and was thereafter dismissed on March 7, 2003, for failure to timely file a request for hearing. Tr. 29-31. Plaintiff filed a second claim for DIB in April 2003, alleging disability as of March 13, 2003. Tr. 93. This claim was denied on November 18, 2005, by decision following a hearing. Tr. 35. Plaintiff alleges in her current claim that her disability began the day following the 2005 decision. See Tr. 85.

application was denied initially and upon reconsideration. Tr. 49, 51. Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Tr. 77. Present at the hearing, held on May 21, 2008, were Plaintiff, her attorney and a vocational expert ("VE"). Tr. 376.

By decision dated August 14, 2008, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 11. On October 8, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 6, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2.    The claimant has not engaged in substantial gainful activity since November 19, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; a facet syndrome; an affective disorder; and a somatoform disorder  (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with a sit/stand option on an occasional basis; no climbing of ladders; occasional climbing of stairs,

balancing, stooping, crouching, kneeling or crawling; and no concentrated exposure to hazards. The claimant is limited to semi-skilled work performed at a non-production pace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 22, 1958, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 404.960(c) and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 19, 2005, through the date of the decision (20 CFR 404.1520(g)).

Tr. 16-21.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to evaluate medical source opinions in accordance with Social Security regulations. The Commissioner contends otherwise

and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions (the "sequential evaluation process").  An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work.  20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  Richardson v.

---

2  Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issue

Evaluation of Medical Source Opinions

State agency medical and psychological consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." Ruling 96-6p, 61 Fed. Reg. 34466-01 at 34467 ("Ruling 96-6p"). In disability cases, they consider the medical evidence and make

findings of fact on the medical issues, including the claimant's residual functional capacity ("RFC").  Findings of fact by these consultants become "opinions" at the ALJ and Appeals Council levels of administrative review, which must be considered in making a decision.  20 C.F.R. § 404.1527(f)(2).  Although not bound by these opinions, the adjudicators may not ignore them and must explain the weight given to the opinions in their decisions. 20 C.F.R. § 404.1527(f); Ruling 96-6p.  The weight to which the opinions of these non-treating sources will be entitled depends on factors such as the consistency of the opinions with other evidence, the sources' qualifications, and the degree to which the sources provide support for their opinions.  20 C.F.R. § 404.1527(d)(3); Ruling 96-6p.

Plaintiff argues that the ALJ erred in evaluating several medical source opinions in the record.  Specifically, Plaintiff contends that the ALJ failed to address or explain what weight was given, if any, to the opinions of non-examining consultants Dr. Marianne Breslin and Dr. Brian Grover.  Plaintiff further argues that the ALJ's finding that the opinion of examining consultant Dr. Kenneth J. Detrick is entitled to little weight is not supported by substantial evidence.  Finally, Plaintiff contends that although the ALJ purported to give "great weight" to the opinion of non-examining psychological consultant Ms. Bonny Gregory, her opinion in fact conflicts with the ALJ's RFC assessment.

Dr. Breslin completed a Mental Residual Functional Capacity Assessment ("MRFC") on January 11, 2002.  Tr. 201-04.  Based on the date it was completed,

6

the MRFC clearly relates to Plaintiff's 2001 DIB filing. <u>See</u> fn. 1, <u>supra</u>. The ALJ is not required to discuss every finding in every medical report. <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) ("[T]he ALJ need not evaluate in writing every piece of testimony and evidence submitted. What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'") (citations omitted). Because Dr. Breslin's opinion was rendered nearly four years before Plaintiff's current alleged onset date, the opinion has little, if any, probative value; and the ALJ had no obligation to specifically discuss it.

Dr. Grover's opinion similarly lacks meaningful relevance. Dr. Grover merely affirmed a physical RFC assessment and the MRFC completed by Ms. Gregory. Tr. 249. Although relevant to the current inquiry, Dr. Grover's affirmation of earlier opinions is not evidence that is so important that it's exclusion from discussion prevents the court from tracing the path of the ALJ's reasoning. Thus, the ALJ committed no error in declining to discuss it. <u>See</u> <u>Carlson</u>, 999 F.2d at 181.

Following an examination on June 22, 2006, Dr. Detrick rendered an opinion that Plaintiff is significantly impaired in her ability to relate to others and tolerate stress in a work environment. Tr. 332. The ALJ, however, gave little weight to that opinion as it was rendered two years before Plaintiff's "successful" treatment with Prozac, and because Dr. Detrick also opined that Plaintiff's ability to understand,

retain and follow simple instructions and perform simple or repetitive tasks was only mildly impaired. Tr. 19 (citing Tr. 332).

Plaintiff argues that the medical evidence does not support the ALJ's reasoning concerning Dr. Detrick's opinion. Docket No. 11 at 9. The court agrees that the ALJ's stated reasoning that the opinion should be discounted because it was rendered two years before successful treatment is not persuasive; nevertheless, the ALJ's finding concerning Dr. Detrick's opinion is otherwise supported by substantial evidence; and, therefore, the court finds that there is no reversible error.

Plaintiff's alleged onset date of disability is November 19, 2005. Tr. 85. Her date last insured was September 30, 2006. Tr. 149. To qualify for benefits, Plaintiff must prove that she became disabled during the period at issue, between November 19, 2005, and September 30, 2006, (the "Insured Period"). See Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005); 20 C.F.R. § 404.131. Dr. Detrick examined Plaintiff on June 22, 2006, during the Insured Period. His findings are germane to the issue of Plaintiff's claimed disability at that time, regardless of whether she later received successful treatment. Dr. Detrick's opinion, however, is consistent with the medical evidence in the record; and accordingly, the ALJ's finding is supported by substantial evidence.

The medical records regarding Plaintiff's mental complaints during the Insured Period are minimal. In May 2004, at a time in which she was previously adjudicated "not disabled," Plaintiff complained to her physician at a pain clinic of depression but

8

declined a prescription for an anti-depressant, stating that she was doing well on

Xanax and preferred to seek treatment from her family physician. Tr. 311-12. There

is no evidence in the medical record that Plaintiff followed up with her family

physician at this time. Moreover, the record indicates there was no further

discussion of anti-depressants with her physician at the pain clinic until

September 11, 2006, at which time Plaintiff's chief complaint was poor sleep. Tr.

328. There is no mention at that time of anxiety, agoraphobia or panic attacks. Id.

Plaintiff was prescribed Cymbalta, an anti-depressant, but there is no indication that

the physician recommended or that Plaintiff sought any further treatment from

mental health practitioners. Id.

The record indicates that on October 10, 2006, Plaintiff finally sought

treatment from her family physician for psychological symptoms. She reported that

she could not tolerate the Cymbalta prescribed by the pain clinic for anxiety and

sleep issues, and that she had continuing anxiety issues. Tr. 355. Plaintiff's

physician prescribed Pamelor for her depression symptoms. Id. In October 2006,

Plaintiff reported "good improvement" of her sleep symptoms with the Pamelor, and

her dosage was increased. Tr. 354. In November 2006, there is no indication of any

mental health or sleep complaints, and Plaintiff's Pamelor dosage was again

increased. Tr. 353. After that visit, there is no record that Plaintiff sought or

received any further treatment for mental symptoms until February 2008, nearly 17

months after the end of the Insured Period, at which time she complained of "lately"

9

increasing panic symptoms. Tr. 352. Thus, the evidence does not support Plaintiff's

contention that she was suffered disabling mental symptoms prior to September 30,

2006, and substantial evidence supports the ALJ's decision to accord minimal weight

to Dr. Detrick's opinion.

Finally, Plaintiff argues that the ALJ's mental RFC assessment conflicts with

the MRFC completed by non-examining psychological consultant Bonny Gregory.

Docket No. 11 at 11. Ms. Gregory completed the MRFC on July 10, 2006, and

based on her review of Plaintiff's medical records, concluded that Plaintiff is not

significantly limited in her ability to remember locations and procedures or to

understand, remember and carry out short and simple instructions, and is only

moderately limited in her ability to understand, remember and carry out detailed

instructions. Tr. 229. Ms. Gregory also found that Plaintiff is not significantly limited

in her ability to perform activities within a schedule and maintain attendance, to

sustain an ordinary routine without special supervision, to work in coordination with

or proximity to others without being distracted, and to make simple work related

decisions. Id. She is only moderately limited in her ability to maintain attention and

concentration for extended periods and in her ability to complete a normal work day

and week without interruptions and to perform at a consistent pace. Tr. 231. Finally,

Ms. Gregory concluded that Plaintiff was not significantly limited in all aspects of

social interaction and adaptation, other than the abilities to interact with the general

public and to respond appropriately to changes in work setting, in which she was

moderately limited.  Id.  Based on these findings, Ms. Gregory concluded that Plaintiff could understand, carry out and remember two step commands with simple instructions, maintain attention and concentration for two hours in an eight-hour work day, make judgments on simple work-related decisions, and is capable of managing in a low-stress setting with limited interpersonal demands, in a stable work assignment involving simple tasks.  Tr. 232.

The ALJ limited Plaintiff to semi-skilled work at a non-production pace.  Tr. 17. Plaintiff contends, however, that Ms. Gregory limited Plaintiff to "unskilled work 'in a low stress setting with limited interpersonal demands.'"  Docket No. 11 at 11 (quoting Tr. 232).  Accordingly, argues Plaintiff, the ALJ was obliged pursuant to 20 C.F.R. §§ 404.1527(d) and (f) and Rulings 96-6p and 96-8p, to explain why he did not adopt Ms. Gregory's RFC findings.  Id. 11-12.  The Commissioner contends that Ms. Gregory did not in fact include any finding that Plaintiff is limited to unskilled work, pointing to Ms. Gregory's findings that Plaintiff had no significant limitation of her ability to understand, remember and carry out short, simple instructions, and only moderate limitation of her ability to understand, remember and carry out detailed instructions.  Docket No. 13 at 10 (citing Tr. 229).

The court need not decide the issue.  Even assuming that the ALJ's RFC assessment was different from Ms. Gregory's, there is no prejudice to Plaintiff by any failure by the ALJ to explain the difference; and the court "will not remand '[a]bsent unfairness or prejudice.'"  See Samons v. Astrue, 497 F.3d 813, 822 (8th Cir. 2007).

> While agency decisions must be sustained, if at all, on their own reasoning, this principle does not mechanically compel reversal when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached. Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture.

Kurzon v. United States Postal Service, 539 F.2d 788, 796 (1st Cir. 1976) (internal citations omitted), quoted in Pechatsko v. Commissioner of Soc. Sec., 369 F. Supp. 2d 909, 912 (N.D. Ohio 2004). This doctrine furthers the interest of judicial economy: "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (citing Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 520 (5th Cir. 1981)).

The VE testified that there are jobs that could be performed by a person of the same age, educational background and work experience as Plaintiff, with the RFC as expressed by the ALJ. One of those jobs included labeler marker, which the VE testified is an unskilled job. Tr. 400. Accordingly, even if the ALJ had found that Plaintiff was limited to unskilled work, she still would have been found to be not disabled, and thus any error regarding Ms. Gregory's opinion would be harmless. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (refusing to remand where there was no "reason to believe that the remand might lead to a different result").

## Conclusion and Recommendation

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence, and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (docket no. 10) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (docket no. 12) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

July 26, 2011