**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

SHEILA R. CHAMBERS, )
)
Plaintiff )
v. )     1:08CV806
)
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
Defendant )
_____ )

**MEMORANDUM OPINION AND ORDER**

Tilley, Senior United States District Judge:


I.

On July 26, 2011, the United States Magistrate Judge's Recommendation [Doc # 14] was filed as to Plaintiff Sheila Chambers's challenge to the denial of her claim for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").  Ms. Chambers filed a timely objection to the Recommendation [Doc. # 16].  The court has conducted a *de novo* review of her claims.  For the reasons discussed below, Defendants Motion for Judgment on the Pleadings [Doc. # 12] is DENIED and Ms. Chambers's Motion for Summary Judgment [Doc. #10] is GRANTED to the extent that the decision of the Commissioner is REVERSED and the case is REMANDED pursuant to sentence

-1-

four of 42 U.S.C. § 405(g) for further administrative action consistent with this opinion.

II.

Ms. Chambers filed an application for DIB on January 9, 2006. As a result of prior unsuccessful applications, she alleged a disability onset date of November 19, 2005. The application was denied initially and on reconsideration. Ms. Chambers then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). The hearing was held on May 21, 2008. On August 14, 2008, the ALJ issued a decision finding that even though Ms. Chambers suffered from severe impairments, Tr. 16, she was not disabled within the meaning of the Act because she still had the capacity to perform jobs that existed in significant numbers in the national economy. Tr. 20. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's determination the Commissioner's final decision for the purposes of judicial review. On July 26, 2011, the Magistrate Judge issued a Recommended Order [Doc. # 14] upholding the ALJ's decision.[1]

Judicial review of an ALJ's denial of social security benefits is authorized by 42 U.S.C. § 405(g). A reviewing court must "uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through an application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th

---

[1]A more complete account of the case's procedural history can be found in the Magistrate Judge's Recommendation.

Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir.1996). In reviewing for substantial evidence, a court is not to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). "However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [ALJ's] findings, and that his conclusion is rational." Vitek v. Finch, 438 F.2d 1157, 1157-1158 (4th Cir. 1971).

### III.

The Act provides that disability benefits shall be available to those who are "under a disability." 42 U.S.C. § 423(a)(1)(E). Federal regulations have reduced the statutory definition of "disability" to a series of five sequential questions. An ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Act's listing of impairments; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. While the burden is on the claimant in the first four steps, in

-3-

the fifth step the burden shifts to the ALJ to show that other work is available in the national economy that the claimant could perform. <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).

Under the fourth step, the ALJ is to determine the claimant's Residual Functional Capacity ("RFC") to perform work in spite of his or her impairments. 20 C.F.R. § 404.1520(a)(iv). Under the fifth step, the ALJ references the claimant's RFC in order to determine the availability of suitable employment in the national economy. 20 C.F.R. § 404.1520(a)(v). While this determination can sometimes be made exclusively through the ALJ's application of the Medical-Vocational Guidelines, when a claimant suffers from both exertional and nonexertional limitations it must be made with the assistance of a vocational expert. <u>Walker v. Bowen</u>, 889 F.2d 47, 49-50 (4th Cir. 1989). Nonexertional limitations are those that affect the claimant's ability to meet the non-physical demands of a job and include, among other things, limitations relating to anxiety, depression, and nervousness. 20 C.F.R. § 404.1569a. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." <u>Walker</u>, 889 F.2d at 50. "The hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 889 (8th

-4-

Cir. 2006).

IV.

The ALJ decided this case at the fifth step, finding that "there are jobs that

exist in significant numbers in the national economy that Ms. Chambers can

perform." Tr. 20. This conclusion was based on the testimony of a vocational

expert at Ms. Chambers's hearing. Tr. 20-21; 399-402. The vocational expert

based her opinion on the following hypothetical:

> Let's assume a person of the same age, educational background, work
> background as the claimant. Let's assume the person is capable of a full
> range of light work, additionally a sit/stand option on an occasional basis is
> required; the person can never climb ladders; can only occasionally climb
> stairs, balance, stoop, crouch, kneel or crawl; the person should have no
> constant exposure to hazards such as moving machinery or, or unprotected
> heights; the person is limited to semi-skilled work; and the person is limited
> to the job performing at a non-production pace. With this Residual
> Functional Capacity... would there be other jobs in the regional or national
> economy the person could perform?

Tr. 400. In response, the vocational expert identified three jobs: labeler marker,

license clerk, and distribution clerk. Tr. 400-401. The hypothetical does not differ

materially from the ALJ's assessment of Ms. Chambers's RFC. See Tr. 17. While

the hypothetical and RFC fairly set out those impairments that result from Ms.

Chambers's physical conditions, they do not fairly set out impairments that result

from her psychological conditions.

Under step two, the ALJ found that Ms. Chambers's "affective disorder" was

"severe." Tr. 16. This conclusion has ample support in the records of Ms.

-5-

Chambers's treating physicians[2] as well as in the opinions of examining agency consultant Dr. Kenneth Detrick, M.D.,[3] non-examining agency consultant Bonny Gregory,[4] and non-examining agency consultant Dr. Brian Grover, Psy.D.[5] However, the only indication that the ALJ considered her severe affective disorder when determining her RFC was his inclusion of a limitation to work at a "non-

_____

[2]See, e.g. Tr. 325 ("review of systems is positive for fatigue and depression") (6/15/2006); Tr. 327 (listing aprazolam, a generic form of Xanax, as a "present medication") (8/11/2006); Tr. 328 (noting that Ms. Chambers "is currently not taking an antidepressant, but is taking (sic) multiple antidepressants in the past including Paxil, Effexor, and most recently Wellbutrin," noting that "[n]one of the SSRIs worked well with her," noting that she "admits to having episodes of crying," and prescribing Cymbalta as an antidepressant.) (9/8/2006); Tr. 355 (noting, ten days after the end of the insured period, that Ms. Chambers "[c]ontinues to have anxiety issues in spite of Alprazolam," that she has "either previously not tolerated or not responded to Effexor, Celexa, Zoloft, or Prozac," and referencing Ms. Chambers's "panic attacks.") (10/10/2006).

[3] Dr. Detrick diagnosed Ms. Chambers with disorders including "major depression recurrent, severe without evidence of psychotic features; generalized anxiety disorder; panic disorder with agoraphobia; pain disorder associated with both psychological factors and a general medical condition." Tr. 331.

[4] Ms. Gregory diagnosed Ms. Chambers with a "[g]eneralized anxiety d/o, panic d/o with agoraphobia," Tr. 239, and "[m]ajor depression recurrent, severe." Tr. 237. The Summary Conclusions of her Mental Residual Functional Capacity Assessment in part found Ms. Chambers to be moderately limited in the ability to "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "interact appropriately with the general public," and "respond appropriately to changes in the work setting." Tr. 230-231.

[5]Dr. Grover "reviewed the evidence" and "affirmed" Ms. Gregory's assessment as written. Tr. 249.

-6-

production pace," which he explained was necessary because of her "anxiety." Tr. 19.  There is no mention of Ms. Chambers's anxiety or depression in the RFC, and the RFC's other limitations do not appear to address these disorders.  No mention is made of any limitation as to Ms. Chambers's ability to relate to others and tolerate workplaces stresses.  This omission is notable given that every agency consultant found her to be limited in this regard, with Dr. Detrick concluding that Ms. Chambers's "ability to relate to others in a work environment and particularly to tolerate the stresses thereof would be expected to be significantly impaired at present," Tr. 331-332, and Ms. Gregory finding that "Ms. Chambers "does may (sic) appear to have social interaction difficulties but appears capable of managing in a low-stress setting with limited interpersonal demands."  Tr. 232.  It is also surprising given that the ALJ recognized under step two that Ms. Chambers had "moderate" difficulties in "social functioning."  Tr. 17.

The ALJ apparently reached the conclusion that a non-production pace was the only limitation that would arise from Ms. Chambers's anxiety and depression. The only explanation for this conclusion was his decision to discredit Dr. Detrick's above-quoted conclusion that Ms. Chambers's ability to relate to others and tolerate the stresses of a work environment would be "significantly impaired."  Tr. 331-332.  The ALJ's grounds for discrediting this opinion was the fact that it was given "two years prior to the claimant's successful use of Prozac," and the fact that Dr. Detrick also found Ms. Chambers to have the ability to "understand, retain, and

follow simple instructions and to perform simple or repetitive tasks[.]"  Tr. 19.  With

regards to the latter explanation, the fact that Dr. Detrick found that Ms.

Chambers's affective disorder did not impact certain capacities does not undercut

his simultaneous conclusion that she was limited in unrelated ways.  With regards

to the first conclusion, the Court agrees with the Magistrate Judge that future

successful treatment of a medical condition has little relevance as to whether the

condition was disabling at the time of diagnosis.  See Doc. # 14 at 8.  There is

also little evidence supporting the ALJ's conclusion regarding successful

treatment.  A review of the record revealed only a single doctor's note from May 9,

2008 stating "Prozac doing better.  20 mg.  Her panic is beginning to decrease,

although she still has some of these feelings."  Tr. 349.  The same note diagnoses

her with "Panic symptoms.  Improving on medication."  Id.  There is little in this

note suggesting that Ms. Chambers's future treatment with Prozac actually

resolved any difficulties she would have with regards to stress and social

interaction in the workplace.  Even if future treatment can be relevant to a

disorder's past effects, this solitary note does not constitute substantial evidence

supporting the ALJ's conclusion when considered alongside the much more

clearly-stated opinions of Dr. Detrick, Ms. Gregory, and Dr. Grover, all of which

were delivered during the insured period.

The Magistrate Judge likewise found the ALJ's stated reasons for

discounting Dr. Detrick's opinion to be deficient.  See Doc. # 14 at 8.  However, he

-8-

nonetheless recommended upholding the ALJ's decision, finding substantial evidence to support a finding that Ms. Chambers did not in fact suffer from disabling mental symptoms within the insured period.  See id. at 8-10.  This inquiry addresses a different question that the one at issue.  We must assume that Ms. Chambers suffered from a severe affective disorder within the insured period because the ALJ found as much under step two, Tr. 16, and, as noted above, that conclusion is supported by substantial evidence.  The periods of non-treatment discussed in Recommendation may be relevant as to whether Ms. Chambers actually suffered from a psychological disorder within the insured period.  However, granting that she did suffer from such a disorder, they have little relevance as to how that disorder actually limited her capacity for employment.

The question is instead whether there is substantial evidence supporting the ALJ's determination as to how Ms. Chambers's recognized psychological disorders affected her residual functional capacity.  A review of the record reveals little evidence supporting the conclusion that Ms. Chambers's severe affective disorder did not limit her ability to tolerate stressful workplaces or employment-related social interaction.  Every agency consultant asked to evaluate how Ms. Chambers's psychological state impacted her residual functional capacity found her to have social and stress related limitations, and medical records from the insured period are consistent with those conclusions.  The RFC is also inconsistent with the ALJ's other findings.  While the ALJ recognized under step

three that Ms. Chambers had "moderate" difficulties in "social functioning," Tr. 17, there is no indication as to why these difficulties would not translate into a concrete limitation in Ms. Chambers's residual functional capacity. Further, while the ALJ claimed to have "given great weight to State agency consultant Bonny Gregory" when evaluating Ms. Chambers's mental residual functional capacity, Tr. 19, he does not explain why he simultaneously failed to include limitations Ms. Gregory stated Ms. Chambers would suffer.

There is not substantial evidence supporting the ALJ's apparent conclusions as to how Ms. Chambers's severe affective disorder impacted her residual functional capacity. These conclusions are also inconsistent with other determinations in the underlying decision. Since the vocational expert based her opinion on a hypothetical that neither mentioned Ms Chambers's affective disorder nor attempted to capture all of the concrete limitations arising from that disorder, the vocational expert's testimony was not "relevant or helpful." Walker, 889 F.2d at 50. A vocational expert's opinion was required for the ALJ to meet his burden under step five. Id. The ALJ therefore failed to carry that burden. On remand, the ALJ should develop an RFC with limitations that reflect all of Ms. Chambers impairments, and should explain how he weighed the relevant opinions of all treating physicians and agency consultants in reaching that determination.

V.

It is for the agency, not the courts, to determine whether a claimant is

-10-

disabled under the Act. However, the agency's determinations must be rational and supported by substantial evidence in the record. <u>Vitek</u>, 438 F.2d at 1157-1158. Given that the underlying decision was based on determinations that were not supported by substantial evidence, that decision is REVERSED and the case is REMANDED to the Commissioner for further administrative action consistent with this opinion.

This the 28th day of September, 2012

__N. Carlton Tilley, Jr.__
Senior United States District Judge